IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

WAYNE MADOLE                                                                                         PLAINTIFF

v.                                        Civil No. 2:20-cv-02239

JAIL ADMINISTRATOR                                                                              DEFENDANTS
JIMMY DORNEY, Franklin County Jail;
M. GOINES; B. HICKS;
SARAH WHORTON;
LEVI (Last Name Unknown "LNU");
CASSIE JOHNSON; MR. JACKSON; and
CHRIS LNU

**OPINION AND ORDER**

Plaintiff, Wayne Madole ("Madole"), currently an inmate of the Franklin County Jail, filed this *pro se* civil rights action under 42 U.S.C. § 1983. Madole proceeds *pro se* and *in forma pauperis*.

The case is before the Court for preservice screening of the Amended Complaint (ECF No. 13) under 28 U.S.C. § 1915A. Pursuant to § 1915A, the Court has the obligation to screen any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

**I. BACKGROUND**

In his Amended Complaint (ECF No. 13), Madole first contends he has been locked down for 23 hours a day, without access to hygiene items, supplies to send legal mail, indigent items, the phones, or a means for submitting grievances. (ECF No. 13 at 5-6). Madole indicates he does not receive his one hour out until after the kiosk used for submitting grievances and requests and the phones were turned off for the night. *Id.* at 5  Madole further alleges that when he submitted a grievance complaining about his hour out being shortened, Defendant B. Hicks replied that a

1

grievance had to be filed within 12 hours of the event or condition complained of. (ECF No. 13-2 at 2). Madole responded that this was impossible since he was on 23 hour a day lock down. *Id.* At times, Madole indicates he does not have access to a shower or cleaning supplies. *Id.* at 6; (ECF No. 13-2 at 1). Further, Madole maintains he was placed on 23 hour a day lock down without "cause, or Due Process." (ECF No. 13 at 5).

Madole states he was never provided a handbook or anything containing the grievance procedure or the disciplinary procedure. (ECF No. 13-2 at 4). However, on December 26, 2020, Madole indicates the grievance policy was put on the kiosk and in the barracks. *Id.*

On December 26, 2020, Madole indicates he was placed in "the hole" for three days. (ECF No. 13-2 at 4). However, Defendant Levi took him out of the hole and placed him on lock down for 30 days with only an hour out every three days. *Id.*

Second, Madole contends he requested a non-pork diet based on "religious preferences." (ECF No. 13-2 at 2). His request was not responded to. *Id.*

Third, Madole alleges that when he was transferred from Logan County to Franklin County his commissary was not given to him.[1] (ECF No. 13-2 at 1). Madole does allege that on December 9, 2020, he was given part of his commissary items. *Id.* at 2. He also states his personal property was not inventoried when he was transferred, and such property included the following: plastic bowl; plastic mug; toothbrush; toothpaste; writing pad; watch; three necklaces (two gold and one silver); gold ring; baby oil; deodorant; hair grease; and his wallet with miscellaneous cards and money. *Id.* at 1. According to Madole, when he asked for a record of his personal property, he was only provided with a record of the clothing items he was wearing when transferred. *Id.*

---

[1] It appears that the transfer occurred on December 2, 2020. This is the earliest date mentioned by Madole in the Amended Complaint (ECF No. 13) and attachments.

Madole then submitted a grievance, and Defendant M. Goines replied that they could only find his notepad, baby oil, comb, deodorant, and styling gel. *Id.*

Fourth, Madole alleges he was denied medical care. (ECF No. 13 at 6). Madole contends he was denied clean clothes and hygiene items for several weeks. *Id.* As a result, Madole indicates he developed a rash on his penis and an infection in his left eye brow. *Id.* He submitted a medical request which he indicates was never answered by a doctor. (ECF No. 13-2 at 5). When the doctor came to the jail on January 8, 2021, Madole was not examined. *Id.* at 6. When Madole submitted a grievance about this, Defendant Hicks told Madole that there were no medical requests from him in the system. *Id.* Madole further alleges his request for a mental evaluation was ignored. (ECF No. 13 at 6; ECF No. 13-2 at 6).

Finally, Madole contends his legal mail has been tampered with, his outgoing legal mail was held, and his incoming legal mail has been withheld. (ECF No. 13 at 7-8). He asserts that he has been denied access to the law library, to § 1983 forms, and to a method for submitting grievances. *Id.* at 7. He maintains that Defendant Levi opened his legal mail outside of his presence and on one or more occasions pages and/or a document were missing. *Id.* at 7-8; (ECF No. 13-2 at 6). Madole also contends he could not get his certificate of account statement needed as part of his IFP application completed by jail officials. (ECF No. 13-2 at 3). He indicates Defendants Hicks and Goines replied they would get with Defendants Johnson and Dorney to see what was "going on with [his] form." *Id.* Madole also indicates his requests for copies of his grievances, which he believed were necessary for his § 1983 lawsuit, were denied and he was told he had access to his grievances on the kiosk. (ECF No. 13-2 at 5-6).

With respect to the individual defendants, Madole alleges that "[e]ach defendant is involved on several occasions as listed in grievances. I will need the court to help decide which

offense is deemed necessary for each defendant." (ECF No. 13 at 5). Madole also states he "would like for the Honorable Judge to help sort out the list of grievable offenses and attach the proper violation to each complaint as deemed by my constitutional rights." (ECF No. 13-1 at 1).

## II.  APPLICABLE STANDARD

The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted, or (2) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded ... to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (*quoting Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). However, even a *pro se* Plaintiff must allege specific facts sufficient to support a claim. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

## III.  DISCUSSION

### A.  Request for the Court's Assistance

Madole asks for the Court's assistance in helping to "decide which offense is deemed necessary for each defendant." Madole misunderstands the role of the Court. Madole, as the Plaintiff, is responsible for setting forth the facts of each of his claims and for affirmatively setting forth how each Defendant personally violated his federal constitutional claims. The role of the Court is to determine whether Madole has alleged a plausible claim against each named Defendant. If he has alleged plausible claims, the Court then orders service of process on those Defendants.

4

### B. Access to the Courts

The Supreme court has held "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). The constitutional requirement of access to the courts may be satisfied in many ways, including prison libraries, jailhouse lawyers, private lawyers on contract with the prison, or some combination of these and other methods. *See Bear v. Fayram*, 650 F.3d 1120, 1123 (8th Cir. 2011).

As a general principle, "[t]o prove a violation of the right of meaningful access to the courts, a prisoner must establish that the [county] has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." *Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008) (citations omitted). To establish such hindrance, there must be some evidence that conduct by prison officials adversely affected the outcome of a prisoner's litigation. *See Entzi v. Redmann,* 485 F.3d 998, 1005 (8th Cir. 2007).

While Madole contends he had difficulty obtaining his certificate of account for his IFP application and was denied copies of his grievances to send with his complaint, neither kept him from filing the instant civil rights lawsuit. Moreover, Madole does not allege that he suffered any legal injury as a result. Madole's claims that his legal mail was tampered with will be considered separately.

No plausible denial of access to the courts claim has been stated. While Madole has alleged difficulties in getting the necessary paperwork to file this civil rights case, he has not alleged the existence of any actual injury. This is fatal to the claim.

### C. Deprivation of Property

The Due Process Clause of the Fourteenth Amendment provides that "'[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law.'" *Walters v. Wolf*, 660 F.3d 307, 311 (8th Cir. 2011)(*quoting* U.S. Const. Amend. XIV, § 1). "Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment." *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976)(internal quotation marks omitted). "In some circumstances . . . the Court has held that a statutory provision for a postdeprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process." *Zinermon v. Burch*, 494 U.S. 113, 128 (1990). Specifically, when the deprivation is the result of a random and unauthorized act and not pursuant to some established governmental procedure, the Court has held that "adequate postdeprivation remedies satisfy the requirements of due process." *Walters*, 660 F.3d at 312 (citations omitted). "The loss of property . . . is in almost all cases beyond the control of the [government], in most cases it is not only impracticable, but impossible, to provide a meaningful hearing before the deprivation." *Id.*

Madole contends he was deprived of some of his commissary items and there was no record of some of his personal property that was transferred with him from Logan County. Madole points to no established procedure that resulted in the deprivation. Even if one or more of the Defendants intentionally deprived Madole of his property, a post-deprivation remedy is all the process Madole is due. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)(intentional deprivation of property does not violate due process when meaningful post-deprivation remedy is available). Arkansas law provides such a post-deprivation remedy through an action for conversion. *See e.g., Elliott v. Hurst*, 817 S.W.2d 877, 880 (Ark. 1991)(cause of action for conversion lies where distinct act of

6

dominion is exerted over property in denial of owner's right).  No cognizable claim for deprivation of personal property is stated.

### D.  Grievance Procedures

"Inmates do not have a constitutionally protected right to a grievance procedure.  Because a . . . grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the grievance procedure is not actionable under § 1983."  *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (citation omitted).  Here, Madole alleges he did not always have access to the kiosk to submit grievances, did not have access to the written procedures, and could not obtain copies of his grievances to submit with his complaint.  Madole submitted multiple grievances.  He was able to make handwritten copies of the grievances and submitted those to the Court with his Amended Complaint.  "[A] prison officials' failure to respond to an inmate's grievances or to return copies of those grievances to that inmate, without more, is not actionable under [§] 1983."  *Everhart v. Flournoy*, Civil No. 4:17-cv-04113, 2019 WL 2503964,at *6 (W.D. Ark. June 17, 2019).   No plausible claim is stated.

### E.  Denial of Medical Care

Jail officials violate the Due Process Clause of the Fourteenth Amendment when they exhibit deliberate indifference to a pretrial detainee's objectively serious medical needs.  *See Ivey v. Audrain Cnty., Mo.,* 968 F.3d 845, 848 (8th Cir. 2020).  To succeed on this type of claim, a plaintiff must demonstrate that he had an objectively serious medical need and that the defendant actually knew of but deliberately disregarded that need.  *Id.* (*citing Morris v. Cradduck*, 954 F.3d 1055, 1058 (8th Cir. 2020)).

In this case, Madole alleges that on December 29, 2020, he submitted a grievance about his rash and an infection in his left eye brow.  (ECF No. 13-2 at 5).  Defendant Hicks replied that this was not a grievance and advised Madole to file a medical request.  *Id.*  Madole alleges he

7

submitted a medical request that was "never answered by the Doctor." *Id.* When the doctor visited the facility on January 8, 2021, Madole alleges he was not seen. *Id.* at 6. When Madole asked why he had not been seen, he alleges that Defendant Hicks replied that there were "no medical requests in the system."

These allegations fail to state a plausible claim against Defendant Hicks. At most, the allegations amount to a claim that Defendant Hicks was negligent. *See e.g., Popoalii v. Correctional Medical Serv's.,* 512 F.3d 488, 499 (8th Cir. 2008)(must allege more than negligence or even gross negligence to establish a constitutional violation for denial of medical care). Madole's allegations do not rise to the level of alleging deliberate indifference on the part of Defendant Hicks. No other Defendant is named in connection with this claim. No plausible claim is stated.

### F. Tampering with Legal Mail

Tampering with legal mail can implicate both the Sixth Amendment right to counsel and the First Amendment right of access to the Courts. The right to counsel under the Sixth Amendment encompasses the right to have prison officials open and inspect privileged legal mail in the inmate's presence. *Wolff v. McDonnell*, 418 U.S. 529, 576-77 (1974). Privileged mail is narrowly defined as mail to or from an inmate's attorney and identified as such. *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997).

As previously discussed, to state a First Amendment access to the Courts claim, a plaintiff must allege that he suffered an actual injury which is defined as "the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." *Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008). It is well settled that an "isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or access to the courts, does not give rise to a constitutional violation." *Id.* at 431 (citations and quotation marks omitted). As

8

previously discussed, to assert a "successful claim for denial of meaningful access to the courts . . . an inmate must demonstrate he suffered prejudice." *Id.* (citation and quotation marks omitted).

Madole alleges that his legal mail "has been deliberately delayed and withheld from going out in mail." (ECF No. 13 at 7). He also alleges staff held or delayed delivery of his incoming mail. *Id.* at 8. He further alleges that on January 11, 2021 and/or January 12, 2021, Defendant Levi opened his legal mail outside his presence and a document was missing from the paperwork. *Id.*; (ECF No. 13-2 at 6).

He does not allege that the mail involved "privileged mail" to or from his attorney. Non-privileged legal mail may be opened outside of the inmate's presence without violating the Sixth Amendment. *Wolff*, 418 U.S. at 576-77. No plausible Sixth Amendment claim is stated.

Madole names no Defendant as being responsible for delaying and/or preventing his legal mail from going out or of holding his incoming legal mail. Instead, he refers generically to jail "staff." (ECF No. 13 at 8). The only Defendant he identifies as having been involved in the alleged tampering is Defendant Levi who opened his legal mail outside of his presence. As noted by the Eighth Circuit in *Gardner*, "[t]he act of opening incoming mail does not injure an inmate's right to access the court." *Gardner*, 109 F.3d at 431. No plausible First Amendment claim is stated.

### G. Request for a Religious Diet

"Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84 (1987). "Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987); *see also Cruz v. Beto*, 405 U.S. 319 (1972). "The determination of what is a 'religious' belief or practice is more often than not a difficult and delicate task . . . However, the resolution of that question is not to turn upon a

9

judicial perception of the particular belief or practice in question; religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Thomas v. Review Board of the Indiana Employment Security Division*, 450 U.S. 707, 714 (1981). The right to religious freedom encompasses the right of an inmate to comply with sincerely held religious dietary needs. *Mbonyunkiza v. Beasley*, 956 F.3d 1048, 1053 (8th Cir. 2020).

"[W]hen a prison regulation or policy impinges on an inmate's sincerely held religious beliefs, the regulation is valid if it is reasonably related to legitimate penological interests." *Mbonyunkiza,*, 956 F.3d at 1053 (quotation marks and citations omitted). In making this determination, the Court examines the four factors set forth in *Turner*, 482 U.S. at 90. These factors are: (1) whether there is a valid, rational connection between the challenged regulation and the government interest put forth to justify it; (2) the continued availability of other means for prisoners to exercise the right at issue; (3) the effect that accommodation of the right would have on other prisoners, on prison staff, and on prison resources; and (4) the existence of ready alternatives to the challenged regulation. *Id.* at 90.

Here, Madole alleges that he requested a non-pork diet. (ECF No. 13-2 at 2). Defendant Hicks responded asking Madole why he needed a non-pork diet. *Id.* Madole replied that he needed a non-pork diet for "religious preferences." No other communications are summarized, and no other facts are set forth regarding this claim.

These facts are insufficient to state a plausible claim. As the Eighth Circuit has stated, "absent evidence that an underlying prison regulation or policy violates the Free Exercise Clause, evidence that a correction official negligently failed to comply with an inmate's sincerely held religious dietary beliefs does not establish a Free Exercise Clause claim under § 1983."

*Mbonyunkiza*, 956 F.3d at 1055. Madole has made no allegations that he failed to receive a non-pork diet because of the policy of Franklin County.

### H. Due Process

Pretrial detainees have no Due Process right to a particular classification or housing assignment. *Nash v. Black*, 781 F.2d 665, 668 (8th Cir. 1986) (The constitutional purpose of the Due Process Clause is to "protect a substantive interest to which the individual has a legitimate claim of entitlement."). Discretionary decisions made in connection with inmate classification or housing implicates no liberty interest. *See e.g., Avery v. Hill*, No. 5:18-cv-05061, 2019 WL 4046551, *8 (W.D. Ark. Aug. 27, 2019); *Hutchings v. Corum*, 501 F. Supp. 1276, 1295 (W.D. Mo. 1980) (incumbent upon plaintiffs to show a classification system deprives them of a constitutional right).

Here, Madole generally alleges he was placed in a lockdown cell without Due Process. He does not allege the placement was the result of a disciplinary action. In fact, he alleges he was housed on lockdown since his transfer from Logan County. No plausible Due Process has been alleged.

### I. Unconstitutional Conditions of Confinement

Madole alleges at least initially he was being held in jail awaiting a hearing on an alleged probation violation. (ECF No. 13 at 3).[2] He was therefore a pretrial detainee. In *Stearns v. Inmate Servs. Corp., et al.,* 957 F.3d 902 (8th Cir. 2020), the Eighth Circuit clarified that, despite some prior inconsistencies in its cases, the deliberate indifference standard of the Eighth Amendment did not apply to conditions of confinement cases brought by pretrial detainees. Instead, the Eighth

---

[2] At some point, Madole's status changed because on December 26, 2020, he states he was committed to a period of incarceration in the Arkansas Division of Correction. (ECF No. 13-2 at 3).

Circuit held in *Stearns* that the claims of pretrial detainees must be analyzed under the Fourteenth Amendment as set forth in *Bell v. Wolfish*, 441 U.S. 520 (1979). In *Bell,* the Court stated that "the proper inquiry is whether [the] conditions amount to punishment of the detainee." *Id.,* 441 U.S. at 535. The Eighth Circuit in *Stearns* stated:

> In *Bell v. Wolfish*, the Supreme Court articulated the standard governing pretrial detainees' claims related to conditions of confinement. The Court held that the government may detain defendants pretrial and "may subject [them] to the restrictions and conditions of [a] detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Id*. at 536-37. The Court articulated two ways to determine whether conditions rise to the level of punishment. A plaintiff could show that the conditions were intentionally punitive. *Id*. at 538. Alternatively, if there is no expressly demonstrated intent to punish, the plaintiff could also show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose. *Id*. at 538-39. If conditions are found to be arbitrary or excessive, it is permissible to "infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id*. at 539.

*Stearns*, 957 F.3d at 907 (alterations in original) (citations to the Supreme Court Reporter omitted).[3]

Madole makes broad allegations that he was placed on lock-down for significant periods of time. During these periods of time, Madole maintains he did not have access to hygiene items, a shower, clean clothing, or to cleaning supplies.

Many of these claims are belied by the grievances Madole attached to his Amended Complaint. (ECF No. 13-2). Madole submitted 20 grievances in the month of December 2020. *Id.* at 1-5. In one of the grievances, he indicated that his lock-down period only extended from December 2, 2020, until December 7, 2020. *Id.* at 1. During this period, Madole maintained that

---

[3] Eighth Amendment cases involving convicted prisoners may provide guidance. "As a pretrial detainee, [Madole] was entitled to at least as great protection as that afforded convicted prisoners under the Eighth Amendment." *Stickley v. Byrd*, 703 F.3d 421, 423 (8th Cir. 2013)(internal quotation marks and citations omitted).

12

he was denied clean clothing, hygiene items, and cleaning supplies. *Id.* The first night he alleged he was denied a shower. *Id.*

Madole does not address being on lock-down again until December 26, 2020. (ECF No. 13-2 at 4). In this grievance, Madole stated that Defendant Levi told him he would be put on lock-down for 30 days with only an hour out of his cell every three days. *Id.* The same day, Madole submitted a grievance stating he had been asking for clean boxers for several weeks and had not received any. *Id.* He indicated he was aware of no laundry schedule, and that despite a response stating he had been advised there was a laundry schedule, he denied knowledge of it. *Id.* Although Madole submitted 10 more grievances before he filed this lawsuit, he did not mention his conditions of confinement in any of them. *Id.* at 4-6.

Pretrial detainees "are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1045 (8th Cir. 2012) (internal quotation marks and citations omitted). "In considering whether the conditions of pretrial detention are unconstitutionally punitive, we review the totality of the circumstances of a pretrial detainee's confinement." *Morris v. Zefferi*, 601 F.3d 805, 810 (8th Cir. 2010). Here, Madole's allegations primarily concern the six days he was in lock-down in early December. In late December, when Madole was again on lock-down, his primary concern was that he had not received clean boxers.

The alleged deprivations were short in duration. Madole alleges he was only deprived of a shower on one occasion. He thus was able to maintain his personal hygiene. The alleged deprivation of clean boxers for several weeks appears to be based on the fact that Madole was unaware of the laundry schedule. Moreover, with the exception of the December 2-7, 2020 lock-down, Madole does not allege the denial of hygiene items or clean jail uniforms, bedding, or

13

towels.  These allegations are simply insufficient.  *See e.g., Stickley v. Byrd*, 703 F.3d 421, 424 (8th Cir. 2013) (no constitutional deprivation where pretrial detainee exhausted his weekly allotment of toilet paper each week before week's end); *Smith v. Copeland*, 87 F.3d 265, 268-69 (8th Cir. 1996) (no constitutional violation where pretrial detainee was subjected to overflowed toilet for four days); *Williams v. Delo*, 49 F.3d 442, 444-47 (8th Cir. 1995) (inmate's deprivation of clothes, running water, hygiene supplies, blanket and mattress for four days did not violate the Eighth Amendment); *Huggins v. Brassell*, No. 5:08-cv00216, 2009 WL 856869, *3 (E.D. Ark. March 27, 2009) ("If Plaintiffs were denied a change of clothes, clean underwear, socks, towels, and soap, such a denial, for the limited days described, does not amount to a constitutional violation").  No plausible claim concerning Madole's conditions of confinement is stated.

## IV.  CONCLUSION

For the reasons discussed above, Madole's claims are **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim.

DATED this 10th day of February 2021.

/s/ P. K. Holmes, III
P. K. HOLMES, III
U.S. DISTRICT JUDGE